### Bennett B. Bloomer v. Henry M. Henderson and others.

Where a bill was filed to set aside a mortgage as fraudulent, and neither the mortgage, the bill nor the answer, contained any reference to a promissory note accompanying the mortgage; *Held,* that the existence of such a note was not involved in the issue, and evidence with respect to it, which was objected to when taken, must be disregarded at the hearing.

The assignee of a chose in action takes it subject to 'all equities existing between the parties to the instrument, but not to any latent equities which some third person may have against the debtor or party bound by the instrument. The assignee of a mortgage, therefore, who has purchased the same in good faith, does not take it subject to any equities between the mortgagor and his grantor, growing out of the fraud of the mortgagor in procuring the title to the land.

One who has given a mortgage to be sold for a fraudulent purpose, cannot set up the fraud as a defense to the mortgage in the hands of a `bona fide` purchaser.

Possession of land by a grantor is no notice of any rights or equities in him, to one who acquires an interest in the land on the faith of his recorded conveyance.

*Heard May 12th. Decided June 9th.*

Appeal by defendant Henderson from Genesee Circuit in Chancery.

The bill was filed against David S. Jones, Edwin L. Hoisington, and Henry M. Henderson, and avers that the complainant, on the 8th of May, 1858, was the owner in fee and was in the quiet possession of certain premises: that on that day he negociated with defendants Jones and Hoisington for the sale of these premises, which resulted in an agreement on the part of complainant to sell them to Jones for $950; $350 of which was to be paid by a deed from Jones to complainant of a forty acre lot in

Venice, Shiawassee county: that the remainder of said purchase money ($600) was to be secured to complainant by mortgage on the land sold, payable December 1st, 1858: that it was made a part of said sale that Jones and Hoisington should buy of one Sawtell another forty acre lot in Venice, and secure Sawtell for $400, the purchase money, by a mortgage on the land in Clayton bought of complainant; in which event, complainant was to take said last mentioned 40 acres, subject to an encumbrance, as a payment of $400, and receive a mortgage on the land sold by him in Clayton for $200 only, payable December 1st, 1858, with interest : that complainant accordingly, on the 13th of May, 1858, executed his deed to Jones, acknowledged it on the 15th, and on the same day took it to Jones: that at his house he met Yerkes, Sawtell's agent, who said Sawtell's deed had not come from Oakland county, where he lived; whereupon, it was agreed that complainant's deed should be delivered to Jones, and Jones should deed to complainant the land which was to be taken at $350, and give to complainant his mortgage for $200 due in December, on the land in Clayton, and that Jones should give his mortgage for $400 to Sawtell, as soon as the deed to complainant arrived of the other 40 acres in Venice, with the understanding that the arrangement should not be binding unless the same was all carried out in good faith : that the deeds were exchanged, and the mortgage for $200 given accordingly : that another day was appointed for a meeting, but Sawtell's agent did not come — but Jones said he would carry out the arrangement when the deed should come : that still another meeting was appointed for May 26th, at the house of Jones, where Yerkes, Sawtell's agent, was present with the deed from Sawtell: that Yerkes, on learning that Jones had put the complainant's deed on record, refused to deliver Sawtell's deed and take back the $400 mortgage on the Clayton land, till he had ascertained that Jones had not in the

meantime encumbered it with anything else than the $200 mortgage to complainant: and that Jones declared he had not encumbered said Clayton property.

It appeared, however, on examination, that on the 15th day of May, Jones and wife had executed a mortgage to defendant Hoisington, on the land deeded by complainant, for $493, payable in six months with ten per cent. interest, which mortgage was recorded on the 17th of May. Thereupon Sawtell refused to deliver his deed, and Jones did not and could not fulfil his contract with complainant. The bill alleged that Hoisington was interested in the transaction with Jones, and aware of all the details and particulars thereof, and in the taking of said mortgage conspired with Jones to defraud complainant: that on the 22d of May, 1858, in order to consummate the fraud, Jones and Hoisington went to Flint to sell said mortgage of $493, and did sell the same to defendant Henderson for a horse worth $100, and $175 in money, and Hoisington assigned the same to Henderson: that at the time of said assignment, complainant was in the open and notorious possession of said premises mortgaged, and had been for five years, which fact complainant believes was known to Henderson: that said mortgage was given by Jones to Hoisington, without consideration; that Henderson paid an inadequate consideration therefor, and had reason to believe that the same was fraudulent and invalid when he took the same: that Henderson has the mortgage, and Hoisington has the horse and money, and complainant fears they will dispose of the same: that complainant demanded of Jones to be placed back in his former position, but in vain; and he claims that Hoisington should return the horse and money to Henderson, and Henderson should cancel his mortgage, and Jones should reconvey the title.

To this bill the defendants Jones and Hoisington did not answer, and an order was entered taking the same as confessed against them.

Henderson answered that he never knew or heard of
the complainant till he was shown, on or about the 17th
of May, 1858, an abstract of the land in Clayton described
in the bill, from which abstract it appeared that complain-
ant once owned said land, and conveyed the same to.
Jones: but he does not know whether at that time, or.
before, or since, said complainant had *possession* of said
land: that said land was not worth $950, and was not
worth more than $500: that he knows nothing whatever
of any of the arrangements and negotiations set forth in
said bill between complainant and the other defendants, or
between them and Sawtell, but admits the execution and
delivery of the deed from complainant to defendant Jones,
as set forth in the bill, and the mortgage from Jones to
Hoisington. He denies fully that he knew of Hoisington's
connection with, or knowledge in regard to, the bargain
between the other parties to this suit and Sawtell; or that
he knew of the alleged conspiracy to cheat and defraud
complainant, or had any intimation of any of the allega-
tions in said bill connected with the sale of said land to
Jones.

He further avers that, on the 17th of May, 1858, Hois-
ington, then an entire stranger, came to defendant at Flint,
and showed him the mortgage of Jones, and asked defend-
ant to purchase it, stating that the land described in it was
unencumbered except by a prior mortgage of $200 to one
Perkins: that he refused to purchase the mortgage till Hois-
ington would bring him an abstract from the registry of
deeds, which he procured, and from which his statements
appeared to be true: that defendant then went himself to
the register's office, and was told by the register that the
abstract was full and complete: that he then inquired about
the value of the land, and was satisfied that it was worth
about $500: he then purchased the mortgage of Hoisington,
and took from him an assignment dated May 17th, 1858,
which was recorded on the same day: he paid to Hoising-

ton a horse worth $150, and $175 in cash, which he believes was the full value of the mortgage, subject to the prior mortgage: that when he bought said mortgage he had no knowledge, information or belief, that complainant was in possession of the premises: that he knew nothing of the consideration of the mortgage between Jones and Hoisington, except that he was told by the latter that the mortgage was given for a valuable consideration, and he had no reason to suppose the same to be fraudulent, and had no cause of suspicion then or now, except from the allegations in the bill; and that he bought the mortgage in perfect good faith, and for an adequate consideration.

Replication to this answer was filed, and considerable evidence taken. Among other evidence, defendant Henderson offered a note, purporting to have been given by Jones to Hoisington, of the same date and for the same amount as the mortgage, with a recital therein that it was given " as collateral security of a mortgage bearing even date herewith, executed upon" the premises described in the mortgage. This evidence was taken subject to complainant's objection for irrelevancy.

*A. & E. Gould*, for complainant:

Henderson took the mortgage subject to all the equities of the original debtor at the time of the assignment:— 2 *Johns.* 441, 479; 2 *Wash.* 255; *Wal. Ch.* 31; 6 *Mich.* 134. The possession of complainant was notice of equities:—19 *Ga.* 335; 15 *Ill.* 540; 10 *Barb.* 354; 10 *How.* 348; 4 *Rich.* 105; 14 *Pa. St.* 112; 8 *Blackf.* 471.

The mortgage was fraudulent and void in the hands of Hoisington, and void also in the hands of the assignee, though he pay value for it without notice of the fraud:—11 *Paige*, 467; 2 *Johns. Ch.* 35; 4 *Wash.* 585; 4 *Hill*, 193; 9 *Cow.* 409; 3 *Cow.* 353; 18 *Johns.* 493; 20 *Johns.* 144.

*Walker & Russell*, for defendant Henderson:

The delivery of the deed by complainant to Jones, was

complete and binding: — 2 *Mich.* 390; 23 *Wend.* 43; 3 *Sand. Ch.* 136.

The fraud for which deeds are set aside, as null, is some fraud in the *execution or delivery of the instrument*, as by a misreading or substitution of one instrument for another. A misstatement as to the *consideration*, much less a failure to pay the consideration, is no ground for setting aside a conveyance: — 8 *Cow.* 290, 293; 3 *Hill*, 513; 2 *Greenl. Cruise, p.* 498.

But the rule that the assignee of a chose in action takes it subject to all existing equities, is confined to the equities between *mortgagee and mortgagor*, and does not relate to equities existing between some third person and the assignor: 2 *Johns. Ch.* 441; 3 *Barr*, 399; 2 *Cow.* 297. A mortgagee's assignee stands precisely in the situation of the purchaser of the fee, and Henderson will be protected under the facts just the same as if he had bought the title of Jones in fee: — 1 *Smith Lead. Cas.* 43; *Cowp.* 279. A bona fide purchaser of a title fraudulently obtained, will be protected: — 2 *Lead. Cas. in Eq. p.* 98.

Whatever may be the rule as to constructive notice from possession, in this case there is a final and conclusive answer to complainant's bill, that when Henderson bought the mortgage he found a deed from the occupant on record, *and in such a case the law presumes, and he was entitled to presume, that Bloomer's possession was consistent with and not adverse to his recorded conveyance:* — 14 *S. & R.* 333; 5 *Pick.* 450; 25 *Mo.* 318; 2 *Stock.* 519; 3 *Sandf.* 176; 15 *N. Y.* 354; 22 *Barb.* 338.

It has been held that such a possession, after a conveyance, is not notice of a lien for unpaid purchase money; much less is it notice in a case like this: — 7 *Sim.* 401.

CHRISTIANCY J.:

All the substantial allegations of the bill in this case, so far as relate to the contract between complainant and Jones

and the whole transaction between him and Jones and Hoisington, as well as between the latter two, are substantially and satisfactorily proved; and the facts disclose, beyond all reasonable doubt, a gross fraud perpetrated by Jones and Hoisington upon the complainant.

But it is unnecessary to consider what might be the rights of complainant as to Jones and Hoisington; as they have allowed the bill to be taken as confessed, and have not appealed.

We are only to consider whether the complainant is entitled to the relief he asks, or to any relief, against Henderson, the purchaser of the mortgage fraudulently executed by Jones to Hoisington, and by the latter sold to Henderson.

From Henderson's answer, which is fully supported by the evidence, it appears that he purchased the mortgage in good faith, and without any actual notice or knowledge of the manner in which the deed had been obtained from complainant, or of any want of consideration for the deed, or of any fraud or intended fraud upon the complainant: that Henderson relied for his knowledge of the title and the validity of the mortgage entirely upon the abstract of the title made by the register of deeds, and had no actual notice of complainant's possession. He paid for the mortgage one hundred and seventy-five dollars in cash, and a horse worth one hundred and fifty dollars.

Though the complainant had improvidently delivered his deed to Jones before he had received the consideration agreed upon, and Jones had put the deed upon record, yet he insists, *first*, that the mortgage of Jones to Hoisington, being but a chose in action, Henderson, in the purchase of it, must be considered as having notice of all the equities existing between complainant and Jones, the mortgagor: *Second*, that the mortgage was void in the hands of Hoisington, as against Jones himself; being executed with the design of defrauding complainant, and must therefore be

void in the hands of the assignee: and *third*, that at all events, as complainant remained in the open and peaceable possession of the premises, that possession was notice to Henderson of his equitable rights in the land.

In answer to the complainant's first proposition, Henderson has undertaken to rely, *first*, upon evidence of a negociable promissory note, claimed (at the hearing) to have been given with and secured by the mortgage, and which was not due at the time of the assignment; and *second*, he insists that if the note be entirely thrown out of the case, and the mortgage be considered purely as a chose in action, still he could only be bound, in purchasing the mortgage, to take notice of any equities existing between Jones, the mortgagor, and Hoisington, the mortgagee; and that as between the latter the mortgage was valid.

As to the first ground taken by the defendant, we think the case is not to be affected, in any respect, by any considerations connected with the promissory note. No note is mentioned or referred to in the mortgage, nor in the assignment. And if the evidence were admissible, we are by no means satisfied from it that any such note was given with the mortgage, or that it had an existence prior to the assignment. But we do not think it proper to discuss this evidence, as all evidence touching the note was objected to, and was clearly inadmissible under the pleadings. The bill is silent on this subject; and the note is not mentioned or relied upon in the answer. It was not involved in the issue. See *Warner v. Whitaker*, 6 *Mich.* 133.

As to the second ground of defense to the complainant's first proposition, we think the assignee of a chose in action takes it subject to all equities existing between the parties to the instrument, but not to any latent equities which some third person may have against the debtor, or party bound by the instrument. In other words, Henderson took this mortgage subject to any equities existing between Jones, the mortgagor, and Hoisington, the mortgagee (unless Jones

was cognizant of, or assented to the sale): because, as to such equities, the instrument indicated upon its face that Jones was the debtor, and the proper party of whom inquiry was to be made, as to any equities he might have against it. But we do not think he was bound to inquire of the complainant (who was not a party to the instrument) as to any rights or equities he might have against Jones, the mortgagor, or Hoisington the mortgagee; as there was nothing in the nature of the instrument, or upon its face, to indicate the propriety of any inquiry of the complainant. Hence, we think Henderson took the mortgage discharged from any equities of the complainant, unless the possession of complainant is to be considered notice, a point we shall presently discuss. We are here considering the case independent of the question of possession:— See *Murray v. Lylburn*, 2 *Johns. Ch.* 441; *James v. Morey*, 2 *Cow.* 297; *Bank of Niagara v. Rosevelt*, 9 *Cow.* 409. The cases cited by complainant's counsel, when carefully examined, will not be found to conflict with the rule here laid down.

But complainant insists that this mortgage was *void* as between Jones and Hoisington, because executed with the design, on the part of both, to defraud complainant.

Whether Jones would have had the right to set up this defense against the mortgage in the hands of Hoisington, is a question which may be considered as not fully settled by the authorities. For the affirmative, see *Smith v. Hubbs*, 1 *Fairf.* 71; *Norris v. Norris' Admr.* 9 *Dana*, 317; *Nellis v. Clark*, 20 *Wend.* 24; for the negative, *Bessey v. Windham*, 6 *Q. B.* 166; *Findley v. Cooley*, 1 *Blackf.* 262; *Fairbanks v. Blackington*, 9 *Pick.* 93; *Hawes v. Leader*, *Cro. Jac.* 271; *Doe v. Roberts*, 2 *B. & Ald.* 367.[*]

But it is unnecessary to determine whether Jones could have set up such a defense against Hoisington, as we are all of the opinion that he could have no right to set up *his own fraud* against Henderson, who purchased the mort-

[*] See *Quirk v. Thomas*, 6 *Mich.* 100, 104, 107, 108.

gage without notice of the fraud, relying in good faith upon the title as it appeared of record. An assignee of a chose in action can not be bound to inquire of the maker of the instrument whether he had not, in concert with the other party, executed the instrument for the purpose of committing a fraud upon others. He, at least, can not be heard to complain if an assignee has chosen to act upon the presumption that it was executed for an honest purpose, and by an honest man. To hold otherwise, would be to encourage fraud, rather than to suppress it. But there is still another reason why Jones would not be allowed to defend against Henderson, on this ground. It is clear from the evidence that the mortgage was made by him *for the very purpose of sale*, to enable him to reap the advantage of his fraud. He himself attempted to sell it before Hoisington sold it to Henderson. No court could sustain such a defense in his behalf without giving direct aid in the consummation of the fraud.

But the complainant insists that his continuance in the open and peaceable possession of the premises, must be considered constructive notice to Henderson of all his rights and equities in the premises.

We do not think the doctrine of constructive notice from possession can safely be carried to this extent, or applied at all to a case like the present. Where a party enters and holds possession under a contract of purchase, or a deed not recorded, or some other claim of right, and continues to hold open and peaceable possession under such claim, such possession is, I think, very properly held to be notice to the world of the right or claim under which he holds. Possession in such cases raises a reasonable presumption that the party in possession has some right in the premises; and it is but reasonable to require those who undertake to acquire a right or interest in the land from any other person, to take notice of the possession,

and to inquire of the party in possession as to the nature and extent of his rights. Such, I think, is the spirit of the rule to be deduced from the authorities ; and I think it correct in principle; but, as the point is not here involved, my brethren reserve their opinion whether this doctrine should apply as against a party ignorant of the possession.

But the object of the law in holding such possession constructive notice, where it has been so held, is to protect the possessor from the acts of others who do not derive their title from him : not to protect him against *his own acts ;* and especially against his own deed. If a party exe· cutes and delivers to another a solemn deed of conveyance of the land itself, and suffers that deed to go upon record, he says to all the world, "whatever right I have, or may have claimed to have in this land, I have conveyed to my grantee; and though I am yet in possession, it is for a temporary purpose, without claim of right, and merely as a tenant at sufference to my grantee."

This is the natural inference to be drawn from the recorded deed; and in the minds of all men, would be calcu· lated to dispense with the necessity of further inquiry upon the point. All presumption of right or claim of right is rebutted by his own act and deed. One of the main objects of the registry law would be defeated by any other rule. See *Scott v. Gallagher,* 14 *S. & R.* 333 ; *Newhall v. Pierce,* 5 *Pick.* 450 ; *N. Y. Life Ins.' Co. v. Cutler,* 3 *Sandf. Ch.* 176 ; *Lead. Cas. in Eq. Vol.* 2 *pt.* 1, *p.* 118. The cases cited by complainant's counsel may, I think, all be reconciled with this view of the rule.

This rule works no injustice in the present case, but is as just in its application, as it is clear in principle.

A gross fraud was committed by Jones and Hoisington. The loss must fall either upon complainant or Henderson. Upon principles of equity, which of them should bear this loss ? If the conduct of each had been equally prudent and unexceptionable, and neither had contributed more than the

other to put it in the power of the wrong doers to commit the fraud, the equities of both might be equal, and the court might leave the parties where they have placed themselves without aiding either. But if either, by gross carelessness, has put it in the power of the wrong doers to commit a fraud, which must result in a loss to himself or to some innocent third person, he should bear the loss who thus improvidently enabled the wrong doers to commit the fraud.

The complainant, in utter disregard of the dictates of common prudence, delivered his deed to Jones before he had received the consideration, and before the arrangement, upon which it was to be delivered, had been perfected; and with equal improvidence, chose to trust to the verbal assurances of Jones, or Jones and Hoisington, that it should not be binding, or should be given back, if the arrangement should not be carried out. He thus put it in the power of Jones to place the deed on record, and to exhibit himself to the world as the owner of the land, and authorized all persons to deal with him as such. Jones then executes the mortgage to Hoisington, who offers it for sale to Henderson. The latter, like a prudent man, requires an abstract of the title, and, after obtaining it, goes to the register to assure himself of its correctness; and being assured of its correctness, makes the purchase. He is guilty of no negligence; he relies in good faith upon the record. If he was misled, it was by the complainant's own act; and it would violate every principle of justice to allow the complainant to throw the loss, occasioned by his own culpable carelessness, upon Henderson, who had acted with due caution and in good faith.

The decree of the court below, so far as it relates to the defendant Henderson, must be reversed, and the bill, as to him, dismissed.

The other Justices concurred.