## Charles N. Terry v. Charles Tuttle and others.

*Mortgage foreclosure: Infant: Payment.* Where a mortgage was foreclosed after the decease of the mortgagor, and the premises on the foreclosure sale were bid off by the widow of the mortgagor at much less than their value, and paid for with funds belonging to the estate of the decedent mortgagor, and the deed taken in the name of such widow for the purpose simply of vesting the title in her, as against an infant son and heir-at-law of the deceased, whatever may have been the intention of the widow as to the son's right, the proceeding was, in legal effect, fraudulent and void, and could not in any manner prejudice his rights to the land.

The payment made upon the foreclosure operated in the same manner as if voluntarily paid from the same fund.

*Mortgage procured by fraud: Agency.: Notice of fraud.* Where such widow, having thus obtained the apparent record title of said premises, was induced by one Carr, upon his promise to give her that amount of money, to consent to execute to him a mortgage upon said premises for one thousand dollars to secure an accompanying bond in that sum, and Carr, without her knowledge, procured such bond and mortgage to be drawn up with the name of John G. Brown as mortgagee and payee, and the widow executed such mortgage and bond, and delivered them to said Carr supposing them to be a bond and mortgage to him, but no consideration was ever paid therefor to her by either Carr or Brown, the latter in taking such mortgage,will be held to have adopted the acts of Carr as his agent, and is chargeable with notice of all the facts of the transaction known to Carr. His rights under such a mortgage would be no greater than as if he had himself procured it of the mortgagor by the same means.

*Mortgage: Consideration: Want of equity.* Such mortgage, in the hands of the mortgagee, no matter what consideration he may have paid Carr, could not be enforced against the interest of the mortgagor in the lands; and, even if the latter should expressly waive the fraud and want of consideration, it could not be enforced against the title of such infant heir. The want of consideration, to say nothing of the fraud, deprived the mortgage of all equities.

*Assignee of mortgage to secure a bond takes subject to all equities.* Such mortgage having been given to secure a non-negotiable bond, any subsequent assignee thereof would be bound to take notice, and therefore conclusively presumed to have had notice, of every defect in the right of the mortgagee as between him and the mortgagor, and of all defenses to the mortgage while in the hands of the mortgagee. Such assignee would succeed only to the rights of the mortgagee and could not enforce the mortgage.

A distinction made between this case and *Bloomer v. Henderson*, 8 Mich., 395.

*Heard October 12. Decided January 4.*

Appeal in Chancery from Genesee Circuit.

*William Newton* and *M. E. Crofoot,* for complainant.

*F. H. Canfield* and *Ashley Pond,* for defendants.

CHRISTIANCY, CH. J.

Charles N. Terry, a minor and sole heir of Reuben S. Terry, by his next friend, filed his bill setting forth, in substance, that his father, Reuben S. Terry, died in the spring of 1865, seized of lots nine and twelve, in block sixteen of the village of Fenton, subject to a mortgage of three hundred dollars to one George W. Nickley, executed by said Reuben S., and his wife, Laura A. Terry; that his father was a soldier in the army of the United States in the late civil war, and died in the army; and that he is informed that there was due to his father, at the time of his death, a certain amount of money or bonds from the township of Fenton, and from the United States; that such moneys or bonds, to the amount of three or four hundred dollars, were received by his mother, Laura A. Terry, or one William Dunham; and that other moneys belonging to the estate of his father, had come into the hands of the mother, or of the said Dunham, at the time of the foreclosure sale mentioned below, which moneys were sufficient to pay the said mortgage; that said Dunham, who is now utterly insolvent, pretended to act as administrator on the estate of said Reuben S. Terry, but avers that he never was such administrator, and had no authority to act as such; that said Dunham and said Laura A., the mother of complainant, combining, etc., with said Nickley, the mortgagee, to defraud complainant, did induce said mortgagee to foreclose said mortgage by advertisement, on the 16th day of January, 1866, for the purpose of placing the title of said lots in said Laura A., and thereby defrauding complainant of his right thereto; that on such pretended foreclosure, said lots nine and twelve were bid off, as one parcel, by said Dunham, for, and in the name of, said Laura A., for three hundred and ten dollars, which

was paid from the funds of said estate, and which belonged to complainant; that the sheriff's deed on foreclosure was executed to said Laura A., in fee, and afterwards recorded, etc.; that the sale was fraudulent and void; that at the time of said sale there was a dwelling-house on said lot nine worth twelve hundred dollars, and that lot twelve was vacant, and worth at least three hundred dollars.

Complainant further alleges that his mother, said Laura A., on the 12th of June, 1868, without any consideration received by her, executed a mortgage on said lots nine and twelve, to one John G. Brown (which the evidence shows to have been for one thousand dollars), which is recorded in the register's office, etc.; that said Brown afterwards pretended to assign the same to defendant Charles Tuttle, who, on the 3d of October, 1868, pretended to sell and transfer a portion of said mortgage to defendant James M. Tuttle, which pretended assignments have been recorded, etc.; charges them with notice of all the facts and complainant's title, and, on information and belief, that they paid no valuable consideration; that said Tuttles are now proceeding to foreclose said Brown mortgage by advertisement, the sale to be October 23, 1869; that Nelson Proper, the next friend of complainant, was, on the 23d of February, 1869, duly appointed administrator on said estate, and took peaceable possession of said lots; that complainant is apprehensive that a sale will take place on said pending foreclosure, and thereby cast a cloud upon his title unless enjoined, etc.; prays that the pretended foreclosure of the Nickley mortgage and the deed from the sheriff to his mother may be declared void and that she be decreed to release to complainant; that said Nickley mortgage be declared paid and satisfied; that said Tuttles be decreed to discharge the pretended mortgage executed to Brown, and that the same be declared void as against complainant, and

for an injunction restraining them from proceeding with their foreclosure.

The Tuttles alone make any defense, the other defendants allowing the bill to be taken as confessed.

Their answer admits that Reuben S. Terry owned the lots in October, 1863, when he and his wife executed the three-hundred-dollar mortgage to Nickley; they deny all knowledge or notice of any fraud or intended fraud in the foreclosure of said mortgage; say they are ignorant whether the money paid on the foreclosure belonged to the estate, but are informed the foreclosure was in good faith; insist that even if the facts alleged in the bill as to that foreclosure and sale are true, they do not affect their rights; admit the execution of the mortgage by Laura A. Terry to Brown, and that the same was duly recorded, but deny it was executed without consideration, as alleged in the bill; and aver that Brown paid a full and valid consideration, and received the mortgage in good faith, without notice of any irregularities in the foreclosure; admit that Brown assigned the mortgage to Charles Tuttle, and that he assigned a part of it to James M. Tuttle as alleged; and aver that both were given in good faith and for a full and valuable consideration, without notice of any fact which could in any manner affect the validity of the mortgage, and that neither they nor said Brown had any notice of complainant's title or of any fraud or irregularity; admit that they are proceeding to foreclose, and claim the right to do so.

The evidence clearly establishes all the material facts alleged in complainant's bill, so far as respects his right as the heir of his father, the foreclosure for the mere purpose of vesting the title in his mother, and the payment of the bid from the assets alleged in the bill. It shows that this was done by the advice of Dunham, who was the administrator, but who, though he gave bonds, never returned an

24 mich.—27.

inventory and soon became insolvent; that Nickley, the mortgagee, refused to foreclose unless the interest was first paid, and that Dunham paid the interest from the assets of the estate, for the sake of having it foreclosed, to place the title in complainant's mother, and in collusion with her proceeded to foreclose, and bid off the property in her name for the amount due on the mortgage, being about three hundred and ten dollars, when the property was worth about fifteen hundred dollars. And whatever might have been the actual intention of the mother as to the son's right, the whole proceeding was, in its legal effect, fraudulent and void as to him, and could not, as between them, be allowed in any manner to prejudice his rights to the lands. The payment made upon the foreclosure operated in the same manner as if voluntarily paid from the same fund without foreclosure, and she obtained no rights whatever by the foreclosure as against complainant.

It does not become necessary to determine the amount of the respective interests to which the son might have been entitled as heir and next of kin, in the real and personal estate, and that to which the widow might have been entitled by way of dower or homestead rights in the lots, and by way of allowance from the personal estate under the statute. She claims nothing on these grounds, and the Tuttles, as we shall see, do not stand in a position to enforce any claim against her, or through her, against complainant. And, though it seems probable from the evidence that, upon a proper administration of the personal property, she might have been entitled to a part of the money with which the lots were bid in on the foreclosure, it is not necessary to determine whether, as between her and complainant, she could (if the exact amount of her interest could be ascertained) be allowed to derive any benefit from having allowed it to be applied in extinguishment of so

much of the mortgage, when it is evident that the whole proceeding in which it was applied was fraudulently to place the property in her name, which belonged to the son. These questions are rendered unnecessary by the view we have taken of the second branch of the case, or the question of the respective rights of the widow, on the one side, and the Tuttles, as the purchasers of her mortgage to Brown, on the other.

Upon this branch of the case the evidence shows (and it is without contradiction) that after Mrs. Terry had thus got the apparent paper and record title into her own name under the foreclosure, she was induced by one Israel L. Carr, upon his promise to give her that amount of money, to execute to him a mortgage upon these two lots for one thousand dollars, to secure an accompanying bond in that sum. Carr employed an attorney to draw up the bond and mortgage, who drew them, as instructed, in the name of Carr as the mortgagee. But subsequently (probably before she had seen the papers), Carr instructed his attorney to erase his name as the mortgagee in the mortgage and payee in the bond, and to insert that of John G. Brown, who was not present. The attorney very innocently made the change, knowing nothing of the arrangements or understanding between the parties, or the reasons for the change. And she, without any notice or intimation of any such change, and without ever having seen or heard of Brown, who was an entire stranger to her, executed the papers, supposing them to be a bond and mortgage to Carr. She swears positively that, though the mortgage was read to her, the name of Brown was not read or mentioned, and the attorney, who was also a notary and took her acknowledgment, does not say that Brown's name was read or mentioned to her; in fact, he does not say that the mortgage was read to her, or that she read it. The reading to

which she refers was probably of so much of the mortgage only, as was thought by her most material, the sum secured, and how payable, and the description of the property; and she, supposing she was executing the papers to Carr, saw no occasion to inquire about the names. We are entirely satisfied she executed the papers supposing them to be a bond and mortgage to Carr, and that Carr, in this, had fraudulently and deliberately deceived her. In fact, had complainant made this a distinct ground in his bill, we are strongly inclined to think the mortgage might have been treated as a forgery, and void as to every body.

The mortgage, as soon as executed, was delivered to Carr; but no consideration whatever, either then or afterwards, was paid her, either by Carr or Brown. Though there is no direct testimony to the fact, the nature of the transaction and all the circumstances, as far as they do appear, excite a very strong suspicion, and afford a probable inference, that Brown was cognizant in fact of the nature of the transaction between Mrs. Terry and Carr, and of the intention of Carr to defraud her; and that he was an accomplice in aiding Carr to perpetrate the fraud. However this may be as matter of fact, when he took the mortgage which Carr had procured to be executed directly to him, he must adopt the acts of Carr as his agent in procuring it, and be held chargeable with notice of all the facts of the transaction known to Carr. He could have no greater rights under such a mortgage than if he had himself procured it of the mortgagor by the same means.

It is too clear, therefore, to admit of doubt, that in the hands of Brown, the mortgagee, this bond and mortgage could not have been enforced against Mrs. Terry, the maker, or against her interest in the land, if she had any. And it is equally clear that Brown could not have enforced it against the complainant's interest, though his mother should

have expressly waived the fraud and want of consideration; as he had taken it in bad faith and without consideration; and to disturb the rightful title of the heir who had committed no fault nor done any act to divest his own title, nor to mislead any one into the belief that he had done so, the holder of the mortgage would be bound to show a state of circumstances which would make it *more equitable* for him to enforce his mortgage against the title of the heir, than for the latter to insist upon his title against the mortgage.    Now, to say nothing of the fraud as against the mortgagor, the fact that no consideration was paid by the mortgagee deprives him of all equities; and Brown stood in this position, whatever consideration he may have paid Carr, if any (none is shown); for being bound, as we have seen, by all the acts of Carr and all his knowledge in the procurement of the mortgage, if he paid Carr any thing, he paid it in bad faith and in his own wrong, and must sustain the loss, unless he can recover from Carr, a question with which we are not here concerned.

Such would be the position of Brown, the mortgagee. Do the Tuttles stand in any better position as his assignees? They might have done so, in some respects, had the mortgage been given to secure a negotiable promissory note, and they had made the purchase before maturity and without notice; but being given to secure a bond non-negotiable, a mere chose in action, they are bound to take notice, and therefore conclusively presumed to have had notice, of every defect in the right of the mortgagee, as between him and Mrs. Terry, the mortgagor, at least, and of all the defenses which the latter might have made to the mortgage, had it remained in the hands of Brown.  They have succeeded to his rights, and nothing more.  They stand in his shoes, and can claim no rights which he could not have

enforced.  As he could not have enforced the mortgage, they cannot.

This case differs from that of *Bloomer v. Henderson,* *8 Mich., 395* (relied upon by the defendants), in two very important particulars.  In that case there was no fraud by the mortgagee against the mortgagor, and no want of consideration as between them ; there was fraud on the part of both of them against Bloomer, the vendor, but the mortgage being executed by Jones to Hoisington, for the very purpose of being sold, and the latter having sold and assigned it to Henderson for a valuable consideration, Jones, the mortgagor, was estopped to deny that the mortgage was good, as between him and the mortgagee.  In that case, also, Bloomer, the grantor of the mortgagor, by his own gross carelessness in delivering the deed to Jones and trusting to his verbal assurances, had placed the record title in Jones, and enabled him and Hoisington to exhibit the title to Henderson, as properly in the mortgagor; and for *this reason* it was held that the loss should fall upon Bloomer, the vendor, rather than upon Henderson, the purchaser of the mortgage.

Here the complainant has done no act by which the defendants Tuttles have been misled into the belief that he had parted with his title.  He was a minor without a guardian, and, instead of doing any thing by which others could be defrauded, others had defrauded him by placing the apparent title in his mother.  His equities are therefore much stronger than those of the Tuttles, if they can be said to have any.  He has been guilty of no negligence. They were negligent in not making inquiries of the mortgagor.  Such inquiries would have resulted in information which must have prevented the purchase.  Whatever they have paid for the mortgage  they paid in their own wrong,

so far as concerns complainant and the mortgagor, and they must bear the loss with such redress, if any, as they may be able to obtain from their assignor or from Carr.

The decree of the circuit court, in chancery, must be affirmed, with costs of both courts to complainant.

The other Justices concurred.