FRANK DAKIN v. CHAUNCEY J. RUMSEY AND ELISHA H. DAKIN.

[See 97 Mich. 284.]

*Fraud—Equity—Sale of interest in estate—Consideration.*

1. Equity will not lend its assistance to one who participates in a supposed fraud upon another for his own gain when it afterwards appears that he himself was the defrauded party.

2. One of several heirs filed a bill to set aside a sale made by him of his interest in the surplus of the estate after the payment of certain legacies, on the ground of alleged false representations made to him as to the purchase of the interest of others of the heirs, including the one who made such representations, and as to his probable interest in such surplus. On the hearing it was established by a fair preponderance of the evidence that complainant was not induced to sell his interest by any false representations, but that he was anxious to sell, and sold voluntarily, and with full knowledge of the condition of the estate. And it is held that this is not a case where relief can be granted upon the ground of inadequacy of consideration; that complainant preferred to take the sum received rather than incur the expense of litigation in which the estate was involved, the result of which was uncertain;

that it is of no consequence, therefore, whether the purchasers of his interest made much or little, nor can the rights of either party be affected in this regard by considering the total amount of profits made from the entire purchases by the defendants.

Appeal from Ingham. (Person, J.) Submitted on briefs February 13, 1895. Decided April 16, 1895.

Bill to set aside the sale of complainant's interest in his brother's estate. Complainant appeals. Decree affirmed. The facts are stated in the opinion.

*Lawton T. Hemans* (*Smith, Lee & Day,* of counsel), for complainant.

*Ellis, Nichols & Miller,* for defendants.

GRANT, J. One John B. Dakin died, testate, July 14, 1891, leaving a large estate, mostly personal property, appraised by the appraisers of the estate at $216,762.35. To this should be added $11,431.79 of questionable paper. His heirs were twelve brothers and sisters and two children of a deceased brother. The total bequests of money amounted to $124,-600. Among these bequests was $40,000, and all the household goods and certain other personal property, to his wife. The will provided that the legacy to his wife should be in lieu of the right of dower in and to his estate. The widow elected to take under the will. After making this decision, she claimed one-half of the surplus or residue of the estate after the payment of the legacies, under How. Stat. §§ 5788, 5847, since there was no residuary clause disposing of the residue of his estate. Thereupon the defendant Elisha H. Dakin filed a bill in chancery, claiming that this provision of the will and the deed of the homestead to her were in pursuance of a contract between her and her husband. A demurrer was interposed to this bill, and the demurrer sustained, which was reversed by this Court.

97 Mich. 284. It was also claimed in this bill that certain of the legacies were void, for reasons unnecessary to mention. All the legatees were made parties to that bill. While this suit was pending, the defendant Rumsey purchased the interest of complainant and several other heirs to the surplus of the estate after the payment of the legacies. Defendant Elisha H. Dakin was interested in this purchase, as was also the law firm of Ellis, Nichols & Miller. The releases and deeds were made to Rumsey. The attorneys, at their option, were to take an interest in the profits, if any were made, or to charge fees for their services. Defendant Dakin and Nichols negotiated the purchases. Rumsey was to furnish the money. Nichols was made a party defendant to the bill, but, after the proofs were taken, the suit was discontinued as to him. May 23, 1894, defendants Rumsey and Elisha H. Dakin, Daniel L. Dakin, and Hubbard H. Dakin settled with the widow for the sum of $20,000, and took an assignment to themselves of all her interest in the estate then undisposed of, the legacies having meanwhile been paid. In the mean time complainant filed the bill in this cause, praying that the sale made by him to defendant Rumsey be set aside, on the ground of fraud. It alleges a conspiracy between defendants and Nichols to cheat and defraud him. The allegations of fraud are that defendant Dakin falsely represented to complainant that four of the heirs and distributees of said surplus had already transferred their interests to defendant Rumsey for the sum of $2,000 each, and that he (Elisha) had sold his interest for a like sum; that Elisha represented to him that Mr. Nichols was in possession of all the facts relating to the estate, and that, if he desired further information about the estate and said surplus before determining whether he would transfer his interest to Rumsey, Nichols would be in Dansville the following day, and he could meet him; that on the following day he met

the defendant Dakin and Nichols, and that they falsely represented to him that there were five suits, including the chancery one above mentioned, pending concerning the said estate, and that, if the widow was successful in said suit, he (complainant) would receive nothing from the surplus, and that, if the five suits continued, the surplus would be entirely consumed; that they also falsely represented that they had purchased for Rumsey the interest of four of the distributees for the sum of $2,000 each, and that Elisha had transferred his interest for the like sum; that Elisha represented that if the claim of the widow were withdrawn, and the estate immediately settled, complainant would receive about $3,100, whereas complainant asserts that, if said suit was determined favorably to her, he would be entitled to $4,000 and upwards, and, if it was determined unfavorably to her, he would receive $8,000 and upwards. He further alleges that he was ignorant of the condition of the estate. Proofs were taken in open court, and a decree entered dismissing the bill.

John B. Dakin had left to complainant a life interest in a farm of 140 acres, and bequeathed him $3,000 in money. The testimony shows that he was a spendthrift and a drunkard, and within the three years previous to the hearing below had squandered the entire $3,000, and also the $2,000 paid him by Rumsey. The representations that there were five suits pending, and that Rumsey had bought out four of the heirs at $2,000 each, were true. Complainant was a man of fair intelligence. He admits that he had heard the will read. He therefore knew the amount of the legacies. He knew the claim made by the widow, and, if he did not know the amount of the estate, it was his own fault, for he had ample opportunity to investigate. Hubbard H. Dakin, his brother, testified that he wrote to him about the estate, explained it to him a good many times after he came, and told him that the

estate amounted to about $225,000. Mr. Nichols had the papers with him showing the condition of the estate, but he did not ask to examine them. He admits that he knew the estate might be worth more than he was to receive; that his brother Hubbard had told him he did not think there would be over $3,000 or $4,000. Mr. Nichols testified that he asked complainant if he knew about the condition and situation of the estate, and he replied that he did. Mr. Nichols further testified that he had a certified copy of the account of the administrators showing the amount of cash on hand and a complete statement of the expenses, and stated to complainant that, if he wanted to know anything about the estate, he would try to explain it to him, and show him just . what there was of it and just what he was selling; that complainant replied that he had already offered his interest for $1,500; that he showed. him the deeds from the six heirs which he had already purchased, and he said he was satisfied. This is denied by the complainant, but we have no hesitation in placing more confidence in the testimony of Mr. Nichols than in that of the complainant, and especially in view of the testimony of other witnesses that he had offered to sell for $1,500.

We think it is established by a fair preponderance of evidence that he was not induced to sell by any false representations, but that he was anxious to sell, and sold voluntarily and with full knowledge of the condition of the estate. He preferred to take the $2,000 rather than incur the expense and uncertainties of litigation. Furthermore, the complainant does not, under his own testimony, come into court with clean hands and an honest purpose. He testified that his brother Elisha told him that he wanted him (complainant) to make up his mind quick; that he (Elisha) was "looking for a telephone 'most any time to stop as soon as Rumsey finds out that there are

five suits depending. He don't know anything about that. I got him drunk, and got him into this myself, and just as soon as he finds out there are five suits depending he is going to stop it." He further testified that he believed this. He, therefore, was willing and believed that he was participating in a fraud upon Rumsey. Since he has participated in a supposed fraud upon another for his own gain, equity will not lend its aid to assist him, even if he were the defrauded party.

It is argued that the consideration paid by defendants was grossly inadequate. This is not a case where relief can be granted upon inadequacy of consideration. Several lawyers were employed. The expenses of litigation were heavy, and the result of litigation with the widow uncertain. It was regarded as so uncertain that they settled with the widow by paying her half of her claim. Complainant preferred to take $2,000 rather than incur the expense of litigation. He was entitled to only one-thirteenth of the surplus. It is of no consequence, therefore, whether the purchasers made much or little. Nor are the defendants' or complainant's rights to be affected in this regard by considering the total amount of profits made from the purchase of the $8\frac{1}{2}$ shares now owned by the defendants.

The decree must be affirmed, with costs.

LONG and HOOKER, JJ., concurred with GRANT, J. McGRATH, C. J., and MONTGOMERY, J., concurred in the result.