VAN ALLSBURG v. KOOYERS.

1. TRUSTS—VOLUNTARY CONVEYANCE—RECONVEYANCE MAY NOT BE COMPELLED.

Grantor who voluntarily conveyed land to his brother to avoid claims of creditors may not compel reconveyance to himself after his then creditors have been satisfied, and it is immaterial whether he received consideration therefor.

2. ADVERSE POSSESSION—POSSESSION BY GRANTOR PRESUMED TO BE IN SUBORDINATION TO LEGAL TITLE.

Where grantor, after deeding land to his brother, continued to work it in connection with other land owned by both, his possession is presumed to be under and in subordination to

legal title held by brother, although he managed it all, received all the proceeds, and paid taxes on all the land worked.

3. SAME—POSSESSION TO BE ADVERSE MUST BE OPEN, NOTORIOUS AND HOSTILE.
    Where grantor continued in possession of land deeded to his brother, such possession would not be adverse unless he manifested his intention to so hold by some unequivocal act of hostility so open, notorious, and hostile as to clearly show to his grantee that he was claiming possession adversely.

Error to Ottawa; Cross (Orien S.), J. Submitted April 11, 1930. (Docket No. 86, Calendar No. 34,822.) Decided June 2, 1930.

Ejectment by Fred Van Allsburg against William Kooyers. From a judgment *non obstante veredicto* for plaintiff, defendant brings error. Affirmed.

*Dean S. Face,* for plaintiff.

*Willard J. Turner* (*William H. Simpson,* of counsel), for defendant.

SHARPE, J. This action is ejectment to recover possession of 40 acres of land in the township of Olive, in the county of Ottawa. The defense is adverse possession. Defendant had verdict, but, on motion of plaintiff, judgment, notwithstanding the verdict, was entered in his favor. Defendant seeks review by writ of error.

Considering the proofs submitted in the light most favorable to the claim of defendant, they reveal the following facts: Defendant secured title to this land by deed of conveyance on June 24, 1892. On July 27, 1898, he conveyed it to his brother, Aldert Kooyers. On February 23, 1927, Aldert Kooyers conveyed it to the State Commercial &

Savings Bank, of Zeeland, and the bank to plaintiff on April 12, 1929. All of these deeds were duly recorded soon after their execution.

Defendant testified that when he purchased the land in 1892 it was "rough * * * some wasn't cleared quite;" that he cleared it up, worked it himself, and that it was a part of his farm; that he remained in possession after deeding it to his brother Aldert in 1898; always paid the taxes on it; that he learned that his brother placed a mortgage on the land after the deed was given him, and paid the interest on it; that he hired his brother to work on the farm, and paid him the wages agreed upon; that he deeded the land to his brother to protect himself against the claims of his creditors, but that all of his debts were afterwards paid. On cross-examination, he testified that his brother had lived with him on the farm; that before deeding this forty he owned 328 acres; that his brother then had title to 120 acres, and that it was all worked together as one farm, and that they never quarreled about who owned the land. He was then asked:

"*Q.* And of course he knew that you were working his 120 acres?

"*A.* Sure.

"*Q.* He consented to that all right?

"*A.* Yes, sir.

"*Q.* You had his permission, always had his permission, didn't you?

"*A.* Yes, sir.

"*Q.* He was willing?

"*A.* Yes.

"*Q.* And you people never quarreled about who owned the land, did you?

"*A.* We didn't quarrel then.

"*Q.* You never claimed to own his land and he never claimed to own yours, is that true?

"*A.* Now it is different.

"*Q.* Now it is different, you have had some trouble now?

"*A.* I don't know, that is what they say.

"*Q.* But through all those 24 years that you people lived there together, he never claimed to own any of your land, did he?

"*A.* Well I signed that over, you know.

"*Q.* But the land that was standing in your name, he never claimed, did he?

"*A.* No.

"*Q.* Never said a word about it?

"*A.* No.

"*Q.* And you never claimed any of his, did you?

"*A.* No, sir.

"*Q.* Never said a word about it, did you?

"*A.* No, sir."

Aldert Kooyers testified that he acquired this land from the defendant, and that they worked the farm, including the lands of both, "everything all together." He admitted that his brother "bossed the whole thing," that he sold the crops and paid the taxes, and that there were no books kept or division of the moneys received from the sale of the farm products.

The defendant voluntarily conveyed this land to his brother in 1898. His purpose in doing so (to avoid the claims of his creditors) would prevent him from compelling a reconveyance to himself after his then creditors had been satisfied. It is therefore immaterial whether he received consideration therefor. They increased their holdings from time to time by new purchases. It was all worked together as one farm. The brother was unmarried, and lived with defendant and his family in the farm home on adjoining land until their differences caused a separation in 1927. The brother then desired to sell

the 40 acres in dispute. The abstract of title clearly showed that he was the owner of the record title thereto. With the conveyance the right of possession passed to the brother. No other or different acts of possession were exercised by defendant than as to other lands which he admits the brother owned, and which were all worked together as one farm. The defendant managed it all. He "bossed the whole thing," received all the proceeds, and paid the taxes on all of the lands. Apparently, it was all assessed to him. The brother complacently accepted defendant's leadership in the work, and made no assertion of his rights until shortly before he left defendant's home, when he sold the land.

Such possession as defendant had did not ripen into a title by adverse possession. His occupation of the land after his conveyance to his brother is presumed to be under and in subordination to the legal title held by his brother, and estops him from claiming that his holding is adverse. He might thereafter have originated a possession in himself which would be adverse to his grantee, but, to do so, it must appear that he manifested his intention to so hold by some unequivocal act of hostility so open, notorious, and hostile as to clearly show to his grantee that he was claiming possession adversely to him. That he used this land as before the conveyance does not, particularly in view of the fact that such use was the same as that of other land admittedly owned by the brother, amount to such a claim of ownership on his part as will charge his grantee with notice that he is holding adversely to him.

In 2 C. J. p. 143 it is said:

"By the execution and delivery of a deed of land the entire legal interest in the premises vests in the

grantee, and if the grantor continues in possession afterward his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such relation and a notorious assertion of right in himself will be sufficient to change the character of his possession and render it adverse to the grantee.''

Many cases are cited in the footnote to sustain this rule. See, also, 1 R. C. L. p. 751, and cases there cited.

In the early case of *Bloomer* v. *Henderson*, 8 Mich. 395, 404 (77 Am. Dec. 453), Mr. Justice CHRISTIANCY said:

''If a party executes and delivers to another a solemn deed of conveyance of the land itself, and suffers that deed to go upon record, he says to all the world, 'whatever right I have, or may have claimed to have in this land, I have conveyed to my grantee; and though I am yet in possession, it is for a temporary purpose, without claim of right, and merely as a tenant at sufferance to my grantee.' ''

This holding was quoted approvingly in *Paldi* v. *Paldi*, 84 Mich. 346, 350, and in *McEwen* v. *Keary*, 178 Mich. 6, 9 (L. R. A. 1916 B, 1063), and was accepted as a correct statement of the rule to be applied in the cases cited in these opinions.

The judgment entered on motion of plaintiff for a directed verdict notwithstanding the verdict of the jury is affirmed.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.