MENARD *v.* MENARD.

1. FRAUDULENT CONVEYANCES—EQUITY—HINDERANCE OF CREDITORS.
   Son who executed deed of property to father in order to save himself harmless from a supposed creditor may not be heard in a court of equity to set aside such deed and prevent the property from becoming part of father's estate upon his death.

2. EQUITY—FRAUD.
   Equity will not lend its assistance to one who participates in a supposed fraud for his own gain, even though it afterward appears that he himself was the defrauded party.

3. FRAUDULENT CONVEYANCES—CONSIDERATION.
   One who voluntarily conveys his land to another to avoid claims of creditors cannot compel reconveyance to himself even after his creditors have been satisfied; and it is immaterial whether he receives consideration therefor.

---

Effect of failure of an oral trust for the settlor, see 1 Restatement, Trusts, § 44.

Invalidity of an intended trust to defraud creditors, see 1 Restatement, Trusts, § 63.

As to whether a resulting trust will arise on a transfer in trust for an illegal purpose, see 2 Restatement, Trusts, § 422.

Criminal or other wrongful conduct in connection with transaction forming basis for claim of restitution, see Restatement, Restitution, § 140.

Illegality of bargain, see 2 Restatement, Contracts, §§ 577, 598.

4. Equity—No Relief to Defrauder Himself Victim of Another's Fraud.

    Equity has no relief for a party who, in the practice of one fraud, has become the victim of another.

5. Fraudulent Conveyances—Equity—Fraud Upon One Who Delays His Creditors.

    Where one executes a conveyance for the illegal purpose of delaying his creditor in the collection of his demand and the party he trusts defrauds him, he must bear the consequences, as courts cannot occupy themselves with adjusting equities between wrongdoers.

6. Trusts—Constructive Trusts—Fraud.

    A constructive trust will not be created in favor of a grantor who conveyed land to avoid liability to a supposed creditor since such relief would give plaintiff an escape from the result of his own fraud not otherwise obtainable.

Appeal from Baraga; Stone (John G.), J. Submitted September 20, 1940. (Docket No. 115, Calendar No. 40,881.) Decided October 7, 1940.

Bill by Donald P. Menard against Ruby V. Menard to set aside a deed. Decree for defendant. Plaintiff appeals. Affirmed.

*Clarence E. Lott,* for plaintiff.

*Spencer & McCormack,* for defendant.

Boyles, J. Plaintiff seeks a decree to set aside a deed signed by him conveying to defendant certain property in the village of L'Anse, Baraga county, on the ground it was not legally executed, was signed in blank, was never delivered to defendant, was without consideration, and was not intended to operate as an absolute conveyance. Defendant is the stepmother of plaintiff by the second marriage of plaintiff's father.

The instrument in question was received by plaintiff for execution through the mail from his father, together with a letter. According to the bill of complaint, his father represented to him that it was necessary for plaintiff to have the deed wit-

nessed and acknowledged in order that he might transfer the premises to the defendant herein for the purpose of saving the property of the plaintiff from any liability on account of certain business dealings of plaintiff and his father. The bill of complaint further alleges that plaintiff's father at the time of forwarding the deed to plaintiff for execution represented that plaintiff had pledged his property as collateral to guarantee a creditor against loss in its business dealings with plaintiff's father; and, further, that plaintiff was liable on account of his father's business dealings with the company. Plaintiff claims these representations were untrue; that it was the understanding between him and his father that the property in question would continue to remain the property of plaintiff, that the instrument was only temporary and was not intended to operate as an absolute conveyance. Plaintiff claims the instrument was executed in blank, but admits it was properly witnessed and acknowledged as requested by his father, and forwarded to him. Upon receipt of same, the father caused the instrument to be recorded. Shortly afterward, plaintiff's father became a suicide, the instrument duly recorded was found in his possession by another son and together with ·other papers turned over to an attorney for the father's estate in the presence of the defendant.

There is ample testimony to support defendant's claim that the instrument was conceived in fraud, executed and returned to plaintiff's father for the purpose of preventing a supposed creditor of plaintiff and of his father from enforcing a supposed liability against plaintiff. Plaintiff himself testified that he returned the deed to his father after it was signed, witnessed and acknowledged, with a letter saying plaintiff hoped he had done it in accordance

with his father's instructions and wishes. The correspondence between the two had been lost or destroyed. Plaintiff testified:

"My recollection of what my father said to me in the letter which accompanied the deed received by me in Bay City is that he would like to have me convey it temporarily. He made some statement in the letter about the Universal Credit Company—that at sometime or another I had assigned my interest as collateral and I was led to believe that was the reason for affixing my signature on this deed. He said just to affix my signature to the deed as to protect me—that was his primary intention—from my liability on behalf of the Universal Credit Company, which, of course, there wasn't. I did not know at the time that I signed and mailed back this deed whether or not I had signed any pledge or lien of my property to the Universal Credit Company. I relied upon the statements that my father made in the letter in signing and witnessing the deed, acknowledging and mailing it back."

Plaintiff admitted that his purpose in sending the conveyance was to save him harmless from liability to a supposed creditor; that he had been led to believe he had assigned his interest as collateral and that the execution of the deed was to protect him from liability, although he later discovered there was no such actual liability. He relied upon the statements of his father that he had signed a pledge or lien on his property to the creditor. Plaintiff was either evasive or hazy as to whether the deed was completely filled out with description and names at the time of his signature.

It is apparent that the intent and purpose of plaintiff was to escape a supposed liability. Defendant testified she knew about the deed being sent to plaintiff by his father; that she saw the letter from

plaintiff to his father in which he said he hoped everything was signed satisfactorily; but that she had not talked with plaintiff or entered into any arrangement with him.

Under these circumstances, plaintiff cannot be heard in a court of equity to assert that the result of his action be negatived and set aside. "He does not come into court with clean hands, and equity will leave him in the bed he chose to make." *Massi* v. *Lavine,* 139 Mich. 140. Equity will not lend its assistance to one who participates in a supposed fraud for his own gain, even though it afterward appears that he himself was the defrauded party. *Dakin* v. *Rumsey,* 104 Mich. 636. One who voluntarily conveys his land to another to avoid claims of creditors cannot compel reconveyance to himself even after his creditors have been satisfied; and it is immaterial whether he receives consideration therefor. *Van Allsburg* v. *Kooyers,* 250 Mich. 518; *Poppe* v. *Poppe,* 114 Mich. 649 (68 Am. St. Rep. 503). Equity has no relief for a party who, in the practice of one fraud, has become the victim of another. *Leland* v. *Ford,* 245 Mich. 599. Where one executes a conveyance for the illegal purpose of delaying his creditor in the collection of his demand and the party he trusts defrauds him, he must bear the consequences. "Courts cannot occupy themselves with adjusting equities between wrongdoers." *Gage* v. *Gage,* 36 Mich. 229. The facts in this case readily distinguish it from *Barnes* v. *Brown,* 32 Mich. 146, and similar authorities, where the defendant himself induces the plaintiff to deed property to him by falsely representing plaintiff is in danger of losing property through claims of creditors. In the case at bar, the defendant was not the active party in procuring the conveyance and had no knowledge of the fraud.

Inasmuch as this is controlling of the case, it is unnecessary to consider the other assignments of error which relate to admission of testimony or validity of execution and delivery of the deed. Plaintiff also claims that in any event a constructive trust should be created in his favor. This would obviously give plaintiff an escape from the result of his fraud which he could not otherwise obtain.

Decree affirmed, with costs to defendant.

Bushnell, C. J., and Sharpe, Chandler, North, McAllister, Wiest, and Butzel, JJ., concurred.